UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-CV-20353-DPG

JOSE AGUIRRE,

      Plaintiff,

      vs.

DRAFTKINGS, INC.

      Defendant.

_____/


**MEMORANDUM OF LAW SUPPORTING DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12( B)(6), AND 9(B)**

## TABLE OF CONTENTS

Page

MEMORANDUM OF LAW ................................................................................................ 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 3

III.    LEGAL STANDARDS .............................................................................................. 6

IV.     ARGUMENT .............................................................................................................. 7

        A.      All of Plaintiff's Claims Fail Because He Fails to Allege that He Suffered
                Any Actual Injury .......................................................................................... 7

                1.      Plaintiff Fails to Allege He Suffered Any Concrete and
                        Particularized Injury Sufficient to Establish Article III Standing .............. 8

                2.      Plaintiff Fails to Allege Any Actual Damage as Required by
                        FDUPTA .................................................................................... 10

        B.      Plaintiff's FDUTPA Claim Also Fails Because He Fails to Allege Any
                Unfair or Deceptive Practice ....................................................................... 11

                1.      Plaintiff Fails to Allege Any Unfair or Deceptive Practice ...................... 11

                2.      Plaintiff Fails to Allege How a Reasonable Customer Could Have
                        Been Deceived By the Unfair or Deceptive Practice ............................... 12

        C.      Plaintiff Fails to State a Claim Under The Florida Free Gift Advertising
                Law ................................................................................................................ 14

        D.      Plaintiff's Fraudulent Inducement Claim Fails Because He Fails to Plead
                the Circumstances Constituting the Alleged Fraud with Particularity ................. 16

V.      CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................ 6

*Barrett v. Scutieri,*
   281 Fed. Appx. 952 (11th Cir. 2008) ................................................................ 16

*Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel, Ltd.,*
   No. 10-22153-JEM, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) ........................................ 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................ 6

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,*
   332 Fed. Appx. 565 (11th Cir. 2009) ................................................................ 12

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ............................................................................................ 8

*Dye v. United Servs. Auto. Ass'n,*
   ___ F. Supp. 3d ___, No. 14-22429-DPG, 2015 WL 861682, (S.D. Fla. Jan. 30, 2015) ...... 5, 6

*Florida Wildlife Fed., Inc. v. S. Florida Water Mgmt. Dist.,*
   647 F.3d 1296 (11th Cir. 2011) .......................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,*
   528 U.S. 167 (2000) ............................................................................................ 8

*Gen. Motors Acceptance Corp. v. Laesser,*
   718 So.2d 276 (Fla. Dist. Ct. App. 1998) ...................................................... 10, 11

*Hanson Hams, Inc. v. HBH Franchise Co.,*
   No. 03-61198-BSS, 2004 WL 5470401 (S.D. Fla. Dec. 21, 2004) .................................. 10, 12

*Hollingsworth v. Perry,*
   133 S. Ct. 2652 (2013) ........................................................................................ 8

*Hook v. Intelius, Inc.,*
   No. 10-239, 2011 WL 1196305 (M.D. Ga. Mar. 28, 2011) ........................................ 5

*Horsley v. Feldt,*
   304 F.3d 1125 (11th Cir. 2002) .......................................................................... 5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Jones v. TT of Longwood, Inc.*,
  No. 06-651, 2007 WL 2298020 (M.D. Fla. Aug. 7, 2007) ................................. 10, 11

*Llado-Carreno v. Guidant Corp.*,
  No. 09-20971-CMA, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) .......................... 17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................... 8, 10

*Macias v. HBC of Fla., Inc.*,
  694 So.2d 88 (Fla. Dist. Ct. App. 1997) ...................................................... 10

*Marty v. Anheuser-Busch Co.*,
  43 F. Supp. 3d 1333 (S.D. Fla. 2014) ......................................................... 14

*McElrath v. ABN AMRO Mortg. Grp., Inc.*,
  No. 11-62216-JIC, 2012 WL 463893 (S.D. Fla. Feb. 13, 2012) ........................... 16

*Millennium Commc'ns & Fulfillment, Inc. v. Attorney General*,
  761 So.2d 1256 (Fla. Dist. Ct. App. 2000) .................................................. 13

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
  842 So.2d 773  (Fla. 2003) .................................................................. 11, 12

*Porsche Cars North. Am., Inc. v. Diamond*,
  140 S.3d 1090  (Fla. Dist. Ct. App. 2014) ................................................... 14

*Prohias v. Pfizer, Inc.*,
  485 F. Supp. 2d 1329 (S.D. Fla. 2007) ....................................................... 10

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ............................................................. 11

*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................................... 8

*Zarrella v. Pac. Life Ins.*,
  *Co.*, 809 F. Supp. 2d 1357 (S.D. Fla. 2011) ................................................. 7

*Ziemba v. Cascade Int'l, Inc.*,
  256 F.3d 1194  (11th Cir. 2001) ............................................................ 7, 17

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ................................................................................... 11

**Statutes**

Fla. Stat. Ann. § 817.415(1)(c) ..................................................................................... 14

Fla. Stat. Ann. § 817.415(3)(b) ..................................................................................... 14

Fla. Stat. Ann. § 817.415(5) .......................................................................................... 14

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................. 1, 2, 7, 16

<u>**MOTION TO DISMISS AND MEMORANDUM OF LAW**</u>

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant DraftKings, Inc. ("DraftKings") has petitioned this Court to compel arbitration pursuant to the express terms of the parties' agreement.  If the Court grants DraftKings' petition to compel arbitration, this Motion to Dismiss will be moot.  Thus, DraftKings suggested to Plaintiff that the parties wait until the arbitration issue is decided before briefing a motion to dismiss, but Plaintiff refused.  Accordingly, DraftKings has no choice but to file this Motion to Dismiss concurrently with its Motion to Compel Arbitration.  As set forth below, even if this case could proceed in federal court, which it cannot, Plaintiff's claims are subject to dismissal under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) for the following reasons.

First, Plaintiff fails to adequately allege any injury and, therefore, cannot establish standing under Article III of the United States Constitution, and has failed to state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  The entire premise of Plaintiff's lawsuit is that DraftKings allegedly deceived him with advertisements that offered to match his initial deposit into his DraftKings' fantasy sports account.  Plaintiff admits, as he must, that DraftKings provided him with the ability to "double" his initial $25 deposit, but he complains that he was not provided the entire $25 matching bonus *immediately* upon his deposit without requiring any further action on his part.  In other words, he is upset that DraftKings is not simply handing out "free money" in exchange for nothing in return.  But, DraftKings never made such an offer.  Instead, the terms of DraftKings' matching bonus program, which were plainly disclosed to Plaintiff before he made his deposit, explained that the matching bonus would be released to Plaintiff only after he participated in a series of paid fantasy sports contests. Given that these terms were spelled out, there is no basis for Plaintiff to expect anything other than what occurred.

1

Further, Plaintiff admits that *he knew* the entirety of the matching bonus was not available to him the moment he made his deposit and saw his account balance, but *he went forward with the paid fantasy sports contests in any event*. Plaintiff's own allegations demonstrate the fallacy of his claims—Plaintiff alleges that "*[u]pon receiving deposit confirmation, customers learn that the ubiquitously advertised, 100-percent deposit match is nothing more than a façade*" (*id.* at ¶ 28) (emphasis added), and that "*customers receive no money upon depositing.*" (*id.* at ¶ 29) (emphasis added). Thus, Plaintiff concedes that he knew how the matching bonus program worked before he entered a single paid fantasy sports contest. He could have withdrawn his deposit at no cost whatsoever. Instead, he made a voluntary choice to go forward with paid fantasy sports contests. Thus, Plaintiff cannot establish standing or any cognizable injury fairly attributable to DraftKings.

*Second*, in addition to failing to allege an injury, Plaintiff's FDUPTA claim fails because Plaintiff fails to allege that DraftKings engaged in any unfair or deceptive practice. Indeed, the deposit page on DraftKings' website plainly states that "*Deposit bonus funds are not available immediately*, but are released into your cash account in increments of $1 for every 100 Frequent Player Points (FPPs) that you earn by playing paid contests." (Req. for Judicial Notice, Ex. A (emphasis added) (hereinafter "RJN").) At most, Plaintiff has alleged that he was disappointed when DraftKings failed to meet his personal desire for instant "free money," despite the fact that DraftKings never promised any such thing, but that falls far short of alleging a FDUPTA claim.

*Third*, Plaintiff's fraudulent inducement claim fails for similar reasons—it fails to allege any fraudulent statement that allegedly caused Plaintiff harm. Additionally, this claim fails because the Complaint fails to plead facts with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). Instead of specifically identifying the "who, what, where, when,

and how" concerning the advertisement that Plaintiff purportedly relied upon, and setting forth all of its contents, his claims merely reference a series of vague and conclusory allegations that fall woefully short of satisfying his pleading burden.

Fourth, Plaintiff's claim under Florida's Free Gift Advertising Law fails because Plaintiff makes no allegation that the bonus deposit that DraftKings offered free of charge was not in fact free so long as he played paid fantasy sports contests in accordance with the terms of the offer. Nor did DraftKings make any representation that the double deposit bonus would be available immediately without the need for customers to enter paid fantasy sports contests.

For these reasons, and those set forth below, Plaintiff's claims should be dismissed.

## II.    FACTUAL BACKGROUND

Plaintiff purports to represent a class of Florida residents challenging certain DraftKings advertisements regarding an offer to double a customer's first deposit, up to $600. Specifically, Plaintiff asserts the conclusory allegation that "DraftKings entices fantasy sports players with promotions intended to make individuals believe that up to $600 of their initial deposits will be *immediately* matched by the site." (Compl. ¶ 23 (emphasis added).) While DraftKings does track and match its customers' initial deposits up to $600, it does not make the full matching bonus amount instantly accessible for paid fantasy sports contests or immediate withdrawal. Rather, customers must engage in paid fantasy contests to obtain the matching bonus. (Compl. ¶¶ 29, 30.) While Plaintiff attempts to portray this as deceptive, Plaintiff fails to tell the Court that this information is *plainly disclosed on the face of the DraftKings deposit page that customers must access to make their initial deposit*. The deposit page states, "*Deposit bonus funds are not available immediately*, but are released into your cash account in increments of $1 for every 100 Frequent Player Points (FPPs) that you earn by playing paid contests." (RJN, Ex. A.)

A screenshot of DraftKings' deposit page is excerpted below (arrow added):



(RJN, Ex. A.)

This plain disclosure simply could not be in a more obvious place on the website given that it appears directly next to where a customer has to type in their credit card information to place a deposit. Plaintiff's failure to identify this fact in his Complaint is astonishing. Further, none of the advertisements Plaintiff references in his Complaint state that DraftKings would immediately make the full matching bonus available for immediate use or withdrawal. Rather than draw on anything actually stated in the advertisements, Plaintiff relies on his own

conclusory allegations that "the ubiquitously advertised, 100-percent deposit match is nothing more than a façade" (Compl. at ¶ 28), that "customers receive ***no money*** upon depositing" (*id.* at ¶ 29), and that his bonus amount of $25 was not immediately released "as promised" (*id.* at ¶ 31). Importantly, Plaintiff neglects to include this disclosure attached to the advertisement alleged in paragraph 27 of his Complaint, which expressly states that "[d]eposit bonus funds are ***not available immediately***, but are released into your cash account in increments of $1 for every 100 Frequent Player Points (FPPs) that you earn by playing paid contests." (RJN, Ex. A (emphasis added).)[1]

Plaintiff also admits that he learned the bonus would not be available in its entirety when he first made a deposit and before he started participating in fantasy sports contests. (Compl. ¶¶ 29, 31.) Thus, Plaintiff could have simply withdrawn his money and not used DraftKings at all. Yet, Plaintiff makes no allegation that he attempted to withdraw his $25 initial deposit from his DraftKings account once he realized he could not use or withdraw the entire $25 matching bonus instantly. Nor does Plaintiff allege that DraftKings denied any request to withdraw his $25 initial deposit. Instead, Plaintiff, fully apprised of how the bonus system works, nevertheless

---

[1] Although Plaintiff failed to attach the screenshot of the DraftKings deposit webpage advertising this promotion with the attached disclosure, this Court may consider the content of the screenshot as it forms the basis of Plaintiff's lawsuit and has been expressly incorporated into the Complaint by reference. Compl., ¶¶ 22, 41, 57-58, 70, 75; *see Dye v. United Servs. Auto. Ass'n*, --- F. Supp. 3d ----, No. 14-22429-DPG, 2015 WL 861682, at *1 n.1 (S.D. Fla. Jan. 30, 2015) ("Although analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto, a court may consider documents attached to the motion if they are referred to in the complaint and are central to the plaintiff's claim."); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Hook v. Intelius, Inc.*, No. 10-239, 2011 WL 1196305, at *2 (M.D. Ga. Mar. 28, 2011) (finding screenshots of the webpages plaintiff visited, which included relevant disclosures, as "essential to a determination" of whether defendant omitted material information and deceived plaintiff, and therefore "it would be a waste of this Court's resources to refuse to consider [the screenshots] on a Motion to Dismiss and to allow the case to proceed to discovery") (internal quotations omitted).

used his initial $25 deposit to enroll in "*multiple fantasy contests*," receiving—as promised—
"*$1*, or 4 percent of the $25 deposit." (*Id.* at ¶ 32.)  In other words, he made an informed choice
to go forward and participate in paid fantasy sports contests on the DraftKings website.  A mere
eight days later, however, Plaintiff filed this Complaint against DraftKings alleging claims
purportedly on behalf of a statewide class and seeking millions of dollars, including punitive
damages.  As addressed below, these claims are baseless and should be dismissed with prejudice.

### III.   LEGAL STANDARDS

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil
Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Although this pleading standard 'does not
require detailed factual allegations[,] it demands more than unadorned, the defendant-unlawfully-
harmed-me accusations.'" *Dye v. United Servs. Auto. Ass'n*, --- F. Supp. 3d ----, No. 14-22429-
DPG, 2015 WL 861682, at *2 (S.D. Fla. Jan. 30, 2015) (quoting *Twombly*, 550 U.S. at 555).
The plaintiff must then "plead[] factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at
678).

In addition, a court may discount "legal conclusions" or "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.
Once all the "conclusory statements" are stripped away, the remaining factual allegations must
do more than "create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S.
at 555.  The factual allegations must "raise a right to relief above the speculative level." *Id.*
Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."
*Iqbal*, 556 U.S. at 679.

Further, an even more rigorous pleading standard applies where, as here, a plaintiff alleges claims sounding in fraud, because Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud" be pled "with particularity." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [those statements], and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation omitted). "The purpose of this heightened pleading requirement," after all, "is to give the defendant fair notice of the claims brought against it, to protect the defendant from harm to its reputation, and to prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Zarrella v. Pac. Life Ins. Co.*, 809 F. Supp. 2d 1357, 1366 (S.D. Fla. 2011).

## IV.   ARGUMENT

### A.   All of Plaintiff's Claims Fail Because He Fails to Allege that He Suffered Any Actual Injury

Plaintiff fails to allege any cognizable injury fairly attributable to DraftKings, a threshold element of Article III standing and the claims he seeks to advance. He has not lost any money or suffered any harm as a result of his voluntary election to participate in fantasy sports contests with the knowledge that the deposit bonus amount was not immediately available, but would only be released incrementally after entering a series of paid contests. Plaintiff's failure to assert any actual "injury-in-fact" means that he not only cannot assert any claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), but also that he lacks standing under Article III to assert any claims at all.

### 1.   Plaintiff Fails to Allege He Suffered Any Concrete and Particularized Injury Sufficient to Establish Article III Standing

Plaintiff has pled no cognizable harm, and as a result, he cannot satisfy the "irreducible constitutional minimum of standing" under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). To establish Article III standing, Plaintiff bears the burden of showing that "(1) [he has] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000); *Florida Wildlife Fed., Inc. v. S. Florida Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) ("If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction."). Plaintiff must also allege a "distinct and palpable injury *to himself*." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Lujan*, 504 U.S. at 561 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) ("[F]or a federal court under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm.").

Here, Plaintiff fails to allege even the most basic facts necessary to satisfy his burden of establishing an injury sufficient to confer Article III standing. Plaintiff, in fact, alleges no injury at all. While the Complaint offers conclusory allegations that DraftKings' advertising

"proximately caused Plaintiff and the Class monetary damages consisting of the full amounts of their initial deposits" (Compl. ¶¶ 28, 54), that makes no sense.  Even if one temporarily indulges the fantasy that DraftKings does not disclose how the bonus matching system works—it clearly does on the same deposit page that users must access to make their deposits—Plaintiff's own allegations make clear that he did not lose his initial $25 deposit because of DraftKings' alleged failure to immediately release the full bonus amount.  Indeed, the Complaint makes plain that Plaintiff voluntarily chose to "*wager[] $25 on multiple fantasy contests*" even after he realized he was not immediately awarded an "additional $25 so that he would have $50 total with which to wager" or withdraw.  (*Id.* at ¶ 31-32.)  As noted, Plaintiff alleges in his Complaint that "[u]pon receiving deposit confirmation, customers learn that the ubiquitously advertised, 100-percent deposit match is nothing more than a façade" (*id.* at ¶ 28), and "customers receive *no money* upon depositing" (*id.* at ¶ 29).  Accordingly, Plaintiff admits that *before he participated in his first paid fantasy sports contest*, he knew that the matching bonus funds were not immediately available for use or withdrawal.

When Plaintiff realized his full deposit bonus was not available for instant use or withdrawal, any confusion he allegedly had regarding the bonus was eliminated.  At that point, Plaintiff was free to withdraw his money from his DraftKings account at no cost or penalty.  Plaintiff, however, made no attempt to withdraw his $25 initial deposit; nor does he allege DraftKings refused any request for a refund.  Instead, Plaintiff knowingly and voluntarily used his $25 deposit to participate in multiple DraftKings fantasy contests, and admittedly was then provided matching bonus funds in accordance with DraftKings' terms.  (Compl. ¶ 32.)  Plaintiff therefore fails to allege any monetary loss, or any injury-in-fact whatsoever, fairly traceable to DraftKings, leaving him without standing to bring any claim.  Plaintiff's failure to allege any

injury "fairly traceable to the challenged action of [DraftKings]" requires that the entirety of his Complaint be dismissed for lack of standing under Article III. *Lujan*, 504 U.S. at 560.

### 2.     Plaintiff Fails to Allege Any Actual Damage as Required by FDUTPA

Plaintiff similarly fails to plead any actual damage under FDUTPA, which provides an independent basis for dismissing the claim brought under that statute.  To state a claim under FDUTPA, a plaintiff must sufficiently allege, at minimum, that he has actually been harmed. *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007) (citing *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997)); *Hanson Hams, Inc. v. HBH Franchise Co.*, No. 03-61198-BSS, 2004 WL 5470401, at *4 (S.D. Fla. Dec. 21, 2004) ("To maintain a private cause of action for legal (as opposed to equitable) relief under the FDUTPA, a plaintiff must show not only that the conduct complained of was unfair, unconscionable, or deceptive, but also that [he] has suffered actual damages proximately caused by the unlawful conduct."). "Subjective feelings of disappointment are insufficient to form a basis for actual damages under the statute." *Jones v. TT of Longwood, Inc.*, No. 06-651, 2007 WL 2298020, at *7 (M.D. Fla. Aug. 7, 2007) (citing *Macias*, 694 So. 2d at 90); *see also City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) ("FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.") (internal quotations omitted).

Accordingly, "[i]n the absence of actual damages attributable to a FDUTPA violation, Plaintiff's claim must be dismissed." *Hanson Hams, Inc.*, 2004 WL 5470401, at *8; *Jones*, 2007 WL 2298020, at *7 ("A plaintiff cannot recover a monetary remedy under the FDUTPA where she fails to establish that she suffered actual damages as a result of the defendant's misrepresentations."); *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. Dist.

Ct. App. 1998) ("[T]o be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer.").

Because Plaintiff sustained no out-of-pocket loss attributable to DraftKings since he alleges that he understood the matching bonus program before using his deposit to play paid fantasy contests, (*see supra* pp. 5-6, 9), he cannot state any claim under FDUTPA. *Jones*, 2007 WL 2298020, at *7 (finding that plaintiff who was never charged any fee by defendant, whose deposit was refunded, and whose insurance premiums were not altered, cannot recover under FDUTPA because she suffered no "out-of-pocket losses"). Subjective feelings of disappointment simply cannot support a claim. *Id.*

**B.      Plaintiff's FDUTPA Claim Also Fails Because He Fails to Allege Any Unfair or Deceptive Practice**

To assert a claim under FDUTPA, Plaintiff must establish: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014). Here, Plaintiff fails to satisfy any of the three elements necessary for an actionable claim under FDUTPA: Plaintiff can neither allege any actual damage, as discussed *supra*, nor can he allege that any unfair or deceptive act or practice has caused him any harm.

**1.      Plaintiff Fails to Allege Any Unfair or Deceptive Practice**

"The Florida Supreme court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). Moreover, while the FDUTPA does not define the term "unfair act," Florida state courts have held that such an act is "one that offends established public policy and one that is

immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hanson Hams, Inc.*, 2004 WL 5470401, at *6 (citing *PNR, Inc.*, 842 So. 2d at 777).

Plaintiff here cannot plausibly assert that the alleged failure of DraftKings to release his full bonus amount of $25 immediately is an act that "offends established public policy," or that it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." In fact, Plaintiff has suffered no injury and even admits that DraftKings has followed through on its advertised promise to double his initial $25 deposit by "releas[ing] into [Plaintiff's] cash account in increments of $1 for every 100 Frequent Player Points (FPPs) that [Plaintiff] earn[ed] by playing paid contests," (RJN, Ex. A), "*when Plaintiff wagered $25 on multiple fantasy contests, he received $1*, or 4 percent of the $25 deposit," (Compl. ¶ 32). At most, Plaintiff has alleged that he was disappointed when DraftKings failed to meet his personal desire for instant "free money," despite the fact that DraftKings never promised any such thing. That falls short of adequately alleging a deceptive or unfair trade practice. *See Hanson Hams, Inc.*, 2004 WL 5470401, at *6 (finding that a franchisee's disappointed expectations regarding defendant's differing treatment were insufficient to find the practices unfair or deceptive under FDUTPA).

### 2. Plaintiff Fails to Allege How a Reasonable Customer Could Have Been Deceived By the Unfair or Deceptive Practice

Plaintiff must establish that the "alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. Appx. 565, 567 (11th Cir. 2009). Here, however, Plaintiff fails to allege that a reasonable customer in the same circumstances would assume that his deposit bonus would be immediately available for withdrawal, and not that DraftKings had simply promised to match the initial deposit dollar-for-dollar subject to certain plainly disclosed terms. As described above, the terms of the deposit bonus program are clearly provided on the very page that customers access to

12

make their initial deposit.  (RJN, Ex. A.)  Moreover, Plaintiff himself alleges that he knew that

the deposit was not matched dollar-for-dollar before participating in his first contest.  (Compl.

¶¶ 29, 31.)

In *Millennium Commc'ns & Fulfillment, Inc. v. Attorney General*, 761 So. 2d 1256 (Fla.

Dist. Ct. App. 2000), the Florida Department of Legal Affairs alleged that a postcard Millennium

Communications, Inc. used to promote "the ability of consumers with bad credit to obtain a

guaranteed credit card" caused consumers to believe they would receive a Visa or MasterCard

automatically.  *Id.* at 1258-59.  The Florida Court of Appeals, however, held that there was

"nothing from the language contained on the postcard which would likely mislead a consumer

acting reasonably under the circumstances to conclude that the credit card to which the

[postcard] refers is a Visa or MasterCard credit card as urged by the Department."  *Id.* at 1264.

Moreover, the Court noted that "[it] is undisputed that the assertions on the postcard were factual

in that all of the recipients of this postcard were in fact eligible to receive a credit card, albeit an

Advantage credit card."  *Id.*

Similarly, here Plaintiff fails to allege that the DraftKings advertisements were in any

way inaccurate.  Plaintiff, in fact, received a portion of the bonus as promised:  "***when Plaintiff***

***wagered $25 on multiple fantasy contests, he received $1***, or 4 percent of the $25 deposit."

(Compl. ¶ 32.)  Plaintiff does not deny that he would receive the full amount of the bonus if he

participated in additional paid fantasy sporting contests.  Plaintiff does not, and cannot, plausibly

allege that a reasonable consumer viewing the same promotions and plainly disclosed terms

describing the program would automatically assume that DraftKings would instantly release the

full amount of his or her bonus.  Again, the disclosure states in no uncertain terms that "[d]eposit

bonus funds are ***not available immediately***, but are released into your cash account in increments

of $1 for every 100 Frequent Player Points (FPPs) that you earn by playing paid contests" (RJN, Ex. A (emphasis added)).

Further, "[to] prove an unfair trade practice, the [plaintiff] must prove that the injury caused by the allegedly unfair trade practice could not have been reasonably avoided by the consumers." *Porsche Cars North Am., Inc. v. Diamond*, 140 So. 3d 1090, 1099 (Fla. Dist. Ct. App. 2014); *see also Marty v. Anheuser-Busch Co.*, 43 F. Supp. 3d 1333, 1339 n.6 (S.D. Fla. 2014)  But Plaintiff admits here that he knew that the full amount of the bonus was not immediately available for use or withdrawal as soon as he made his deposit.  Thus, Plaintiff "could have reasonably avoided" any loss of his deposit by simply withdrawing it.  Because Plaintiff voluntarily decided to carry forward with paid fantasy sports contests, he cannot state a claim under the FDUTPA.

**C.    Plaintiff Fails to State a Claim Under the Florida Free Gift Advertising Law**

The Florida Free Gift Advertising Law states, "[i]t is not the intent of the Legislature to prohibit the use of gifts in legitimate promotions of trade so long as the advertising of such gifts and promotions makes full disclosure of any requirement for purchase or contractual obligations to be assumed in order to qualify for the gift." Fla. Stat. Ann. § 817.415(1)(c).  The statute further defines "free" as a term that "reasonably lead[s] a person to believe that he or she may receive, or has been selected to receive, something of value, entirely or in part without a requirement of compensation in any form from the recipient." *Id.* at § 817.415(3)(b).  In addition, the advertising "in which items are offered as free with conditions or obligations necessary to acceptance shall include a clear and conspicuous statement of any such conditions or obligations and advertising in compliance herewith shall not be considered deceptive." *Id.* at § 817.415(5).

Plaintiff here alleges that DraftKings made the following promises of a free gift:

- On its website, DraftKings states that new depositors will "Receive a 100% First-Time Deposit Bonus" if they "CLAIM [their] *FREE* OFFER[.]"  (Compl. ¶ 41.)

- DraftKings assured Plaintiff and the Class that the site would "DOUBLE [THEIR] CASH" upon deposit.  (*Id.*)

- [DraftKings] further promised Plaintiff and the Class that if they deposited $25, they would get a "$25 *Free* Bonus"; if they deposited $100, they would get a "$100 *Free* Bonus"; if they deposited $250, they would get a "$250 *Free* Bonus"; and if they deposited $600, they would get a "$600 *Free* Bonus."  (*Id.*)

Plaintiff, however, makes no allegation that the bonus deposit that DraftKings offered free of charge was not in fact free so long as the customers played paid fantasy sports contests in accordance with the terms of the offer.  Indeed, Plaintiff simply makes no allegation that DraftKings denied him or intends to deny him his full bonus of $25, only that, consistent with the express terms of the offer, he did not receive the full amount immediately.  While Plaintiff baldly asserts that DraftKings' advertising deceptively suggested that the matching bonus would be made available immediately, as discussed above, Plaintiff *fails to allege that DraftKings made any promise in any advertisement that a customer would receive the entire matching bonus immediately after the first-time deposit is made*.  The references in the Complaint to the bonus being available immediately upon initial deposit are entirely the result of Plaintiff's imagination, not anything in DraftKings' advertisements.  Moreover, Plaintiff omits the explicit disclosure included in the deposit page referred to in his Complaint, which expressly states that "[d]eposit bonus funds are *not available immediately*, but are released into your cash account in increments of $1 for every 100 Frequent Player Points (FPPs) that you earn by playing paid contests."  (RJN, Ex. A (emphasis added).)  Accordingly, the Complaint fails to establish a claim under the Florida Free Gift Advertising Law.

**D.      Plaintiff's Fraudulent Inducement Claim Fails Because He Fails to Plead the Circumstances Constituting the Alleged Fraud with Particularity.**

Plaintiff's fraudulent inducement claim is also fatally flawed for several reasons.  "To state a claim for fraudulent inducement under Florida law[,] a plaintiff must allege that (1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment."  *Barrett v. Scutieri*, 281 Fed. Appx. 952, 953 (11th Cir. 2008); *McElrath v. ABN AMRO Mortg. Grp., Inc.*, No. 11-62216-JIC, 2012 WL 463893, at *3 (S.D. Fla. Feb. 13, 2012).

As addressed above, Plaintiff has failed to identify any false statement.  To the contrary, the terms of the deposit bonus were clearly identified on the deposit page of the website and in advertisements.  (RJN, Ex. A.)  Moreover, Plaintiff has failed to plausibly allege that DraftKings intended to mislead Plaintiff given that it plainly disclosed the terms of its deposit matching program.  (*Id.*)  And, as addressed above, Plaintiff cannot plausibly allege detrimental reliance as required because he admits that he understood how the deposit bonus program worked when he deposited his funds, and therefore could have withdrawn them without any harm.

In addition to these fatal problems, Plaintiff has failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[2]  "Where a plaintiff alleges fraud 'a party must state with particularity the circumstances constituting fraud.'"  *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel, Ltd.*, No. 10-22153-JEM, 2011 WL 4434891, at *2, 5 (S.D. Fla. Sept. 23,

---

[2]  Plaintiff's FDUTPA claims also fail for the same reason; they are not pled with the required particularity.  *See Begualg Inv. Mgmt., Inc.*, 2011 WL 4434891, at *2, 5 (finding that fraud claims brought under the Florida Deceptive and Unfair Trade Practices Act must be pled with Rule 9(b) particularity).  To avoid burdening the Court with repetitive arguments, this issue is addressed here: Rule 9(b) has equal applicability to Plaintiff's FDUTPA claims.

2011); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CMA, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) ("The particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law"). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [those statements], and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *See Ziemba*, 256 F.3d at 1202.

Plaintiff here completely fails to allege his claims with the required particularity. Plaintiff's fraudulent inducement claim relies only on a single vague and conclusory allegation that he justifiably relied on the allegedly misleading advertisements to his detriment: "DraftKings' deceptive advertisements, and the Plaintiff's and the Class' subsequent reliance on said advertisements proximately caused monetary and incidental damages to Plaintiff and the Class." (Compl. ¶ 62.)  While Plaintiff excerpts some ads in his Complaint, he fails to allege which specific ads he relied on, let alone the content of such ads, when those ads or promotions were aired or posted, when he saw those ads, and how he supposedly came to rely on those ads. Accordingly, Plaintiffs' fraudulent inducement claim, like the rest of his claims, is fatally deficient and should be dismissed.  Further, because DraftKings' disclosures plainly describe the bonus matching program and Plaintiff's own allegations demonstrate he has no standing or claim, the Complaint should be dismissed with prejudice.

## V.        CONCLUSION

While DraftKings believes that this entire action must be arbitrated pursuant to the

express terms of the parties' agreement, in the alternative DraftKings respectfully requests that

the Court dismiss this action in its entirety for the reasons stated above.

**RESPECTFULLY SUBMITTED** in Miami, Florida, on June 2, 2015.

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>*Of Counsel for DraftKings, Inc.*<br>333 South Grand Avenue, Suite 5400,<br>Los Angeles, California, 90071<br>Telephone: (213) 229-7000<br>Fax:  (213) 229-6234<br>E-mail: tloose@gibsondunn.com<br>E-mail: jfogelman@gibsondunn.com<br>E-mail: aschwing@gibsondunn.com<br>*pro hac vice motion s forthcoming* | RIVERO MESTRE LLP<br>*Attorneys for DraftKings, Inc.*<br>2525 Ponce de Leon Boulevard, Suite 1000<br>Miami, Florida 33134<br>Telephone: (305) 445-2500<br>Fax: (305) 445-2505<br>Email: jmestre@riveromestre.com<br>Email: kblanson@riveromestre.com<br><br>By: _____ s/ Jorge A. Mestre _____<br>JORGE MESTRE<br>Florida Bar No. 088145<br>Kadian Blanson<br>Florida Bar No. 0098880 |

## **CERTIFICATE OF SERVICE**

I CERTIFY that on June 2, 2015, I electronically filed this document with the Clerk of the
Court using CM/ECF. I also certify that this document is being served today on all counsel of
record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S.
Mail.

_____ s/ Jorge A. Mestre _____
Jorge A. Mestre